ANDREW J. ERSKINE *vs.* OLIVER MOULTON.

Kennebec, 1876.—May 31, 1877.

*Deed.*

If there are conflicting descriptions in a deed, which cannot be reconciled that construction should be adopted which best comports with the intent of the parties, and the circumstances of the case.

One of the boundaries of the land conveyed was first described in the deed as "to a monument upon the bank of the stream, thence westerly by the stream to the road." The deed closed with reference to a plan in which the same boundary in its whole length falls short of the stream. *Held*, that this was not a case for the application of the rule that the first clause in a grant prevails, and that the plaintiff's title was restricted to the line indicated by the plan.

ON EXCEPTIONS.

TRESPASS, *quare clausum.*

The contention was as to the plaintiff's north divisional line. Both parties claimed under the same grantor, the plaintiff by the earlier title. The Worromontogus river was a monument on the north of the plaintiff's lot, who claimed to low water mark, it being a stream where the tide ebbed and flowed. The defendant contended for a more southerly line on the bank of the river indicated by a plan, which was by reference made part of the deed. The plaintiff claimed the more northerly line, on the ground that it was certain without reference to the plan; and because it was the first clause in the grant; the defendant, the more southerly

line, on the ground that the whole instrument should be taken together and that the plan best showed the intention of the parties.

The plaintiff's deed ran thus: "a certain piece of land in Pittston, beginning on the road leading from Pittston village to Windsor at the south-west corner of land now owned by said Erskine; thence running north 15° west, 50½ rods to a stake at the southeast corner of the Neal lot, so called; thence north 63° west, 8 rods to a cedar post on the bank of Worromontogus at the southwest corner of the Neal lot, so called; thence westerly by said stream to the above named road leading from Pittston village to Windsor; thence by said road to the bounds first named, containing 11 acres more or less, reserving the right of flowing great Worromontogus cove so called.

For a more full description reference is had to a plan made by Asbury Young, November, 1865.

The presiding justice, among other things instructed the jury as follows:

"The deed in evidence is perfectly clear, definite and distinct, independent of the plan used in connection with it. Under this deed there is only one line in dispute (and I am thus particular in order to give the parties their right of exception), and that is the northerly line claimed by the plaintiff, and the southerly, claimed by the defendant. One claims it to be the centre of the stream, and the other, southerly of the stream. The deed reads, 'to a monument upon the bank of the stream, thence westerly by said stream to the above named road leading,' etc.

Now this language, almost precisely, has been before the courts of this state and other states many times, and the decisions have been uniform. Clearly and distinctly this stream is a natural boundary. The court say when it goes to a monument on the bank, and thence down the stream, that in the case where the stream is navigable water, that is, where the tide ebbs and flows, it would go to low water mark. In fresh water streams where the tide does not ebb and flow, it would go to the centre of the stream. Because being natural boundaries, they always go to the centre of them, while to artificial boundaries they only go to the outside.

Now there can be no doubt then, when we ascertain whether the tide ebbs and flows in this stream, about the construction to be given to that deed, so far as this is concerned. And the proof seems to be clear, definite, and I believe undisputed, that this is a stream where the tide ebbs and flows from the Kennebec, from shore to shore. I have instructed you that that language would carry this plaintiff to low water mark on that stream. The plan which has been put in, and which was put in with the deed in reality, because it is a part of the deed, referring to it, becomes as much a part of the deed as though it was incorporated in the deed. That plan, the parties seem to treat as describing a line falling short of the stream, not going to that.

That presents, then, a simple question. In the first place, these premises are described distinctly in the deed, and defined upon every side by monuments fixed upon the earth, which are not disputed and not disputable, and cannot be, because the stream is a natural monument. Then comes another description in the deed which to a certain extent is inconsistent with the first. It is a principle of law, when there are two descriptions in a deed, definite and distinct, and the second one to some extent modifies or counteracts or limits the first, unless there is language which shows it was intended so to limit, that the first one prevails. The first clause in a grant, and the last clause in a will is always a rule of law. Therefore I instruct you in this case, taking the whole deed together, including the plan as a part of it, that it gives this plaintiff the right to that land to low water mark upon that stream, and what I mean by low water mark is when the tide is out, to the edge of the water at that time when it is low tide. That is a question of law; but of course the parties understand their remedy, if I am mistaken in the law."

The verdict was for the plaintiff; and the defendant alleged exceptions.

*E. F. Pillsbury & W. P. Whitehouse,* for the defendant.

*J. Baker & H. S. Webster,* for the plaintiff.

VIRGIN, J. In the construction or interpretation of written instruments, the intention of the parties as therein expressed is

the great object of search. If while standing in the shoes of the
parties when a deed was executed and reading it in the light of the
then existing facts and circumstances, such as the nature, condi-
tion, occupation, etc., etc. of the thing granted, the intention is not
apparent, then resort may be had to the rules of construction.
Many of these rules are intended to aid in ascertaining the inten-
tion of the parties by pointing out and giving effect to those things
about which the law presumes the parties are least liable to make
mistakes. *Treat* v. *Strickland*, 23 Maine, 234, 244. Some are
arbitrary, resorted to "for want of a better reason," and to be in-
voked therefore if at all only when all other means fail. If, how-
ever, the intention is apparent it must govern. *Abbott* v. *Abbott*,
51 Maine, 575, 581.

One of the general rules to be observed, and to which it is said
there is no exception, is, "taking the whole instrument together,
what does it mean?" Thomas, J., in *Ide* v. *Pearce*, 9 Gray, 350,
354.

The case discloses the following facts : The Worromontogus
stream flowing westerly is a tributary of the Kennebec river flowing
southerly. About twenty rods above the confluence, the stream
leaving the upland reaches a parcel of flat land elliptical in form,
three to four acres in extent, and known as the Worromontogus
cove. At the upper end of the cove, the stream divides, one chan-
nel flowing along the northern and the other the southern border
to the lower end where they unite, flow under a bridge (constitut-
ing a part of the highway along the bank of the river,) and thence
into the river. The cove is flowed by the tide backing up from the
river and by freshets. At other times the land between the chan-
nels is bare, a small portion of it being more or less covered with
small bushes. Logs can be so easily floated in there from the
river, that the cove has been used for many years as a safe and con-
venient place for securing and booming them for rafting as well
as for holding them to supply the mills at the head of the cove
ever since their erection.

In the fall of 1865, Joseph Bradstreet, owning the land all
about the cove, agreed to convey certain land on the south side
to the plaintiff. In November following, the parties procured a

surveyor "to run out the land" who in their presence surveyed the premises and subsequently made a plan thereof which is referred to in the deed and was put into the case. By the survey and plan the north line *i. e.*, the line next to the stream or cove, commences where the third call in the plaintiff's deed begins, to wit: at a cedar post on the bank of the stream at the south-west corner of the Neal lot, between which and the stream is a rod of upland ; and thence by seven specific courses and distances through as many monuments to the highway, thus running along "on the borders of high water, to where the water sometimes flows in a freshet."

In the first clause of the deed, the third call commences at the same cedar post and describes the north line as "thence westerly by said stream to the above named road." A bank, margin or side of a stream may be monuments limiting the land thereto when the language clearly shows such to be the intention of the grantor. *Bradford* v. *Cressey*, 45 Maine, 9, and cases there cited. It is familiar law, however, that when land is described as bounded by a monument standing on the bank of a stream where, as in this case, the tide ebbs and flows, and thence by the stream, etc., the effect is to convey the grantor's title to the land and flats to low water mark ; and the construction may be the same if the monument do not stand exactly on the bank but a short distance back from it—the monument then being referred to only as giving the direction of the line to the stream and not as restricting the boundary on the stream. *Pike* v. *Munroe*, 36 Maine, 309. This clause however, is not the whole description. The plan is a part of the deed and to have the same effect as if its details of courses, distances and monuments were incorporated into the deed. *Lincoln* v. *Wilder*, 29 Maine, 169.

The instruction to the jury was, that the first description in the deed should prevail, and that the plaintiff's land extended to low water mark. We think this was erroneous. We are aware of the old maxims, that the first deed and the last will shall operate, Shep. Touch. 88 ; and that of two contradictory clauses in a deed, the former shall stand. 2 Cru. Dig. (Greenl. ed.) 591. "These, however, are technical rules of construction, adopted as declared by Lord Mansfield, 'for want of a better reason,' and are

not entitled to much consideration, and should never be resorted to unless difficulties are presented which cannot be resolved by more satisfactory rules. In modern times, they have given way to the more sensible rule, which is in all cases to give effect to the intention of the parties if practicable; when no principle of law is thereby violated. This intention is to be ascertained by taking into consideration all the provisions of the deed, as well as the situation of the parties." *Pike* v. *Munroe,* 36 Maine, 309, 315. To the same purport are 2 Cru. Dig. (Greenl. ed.) 468, note 1, and 23 Am. Jur. 277.

If there be conflicting descriptions in a deed, which cannot be reconciled, that construction should be adopted which best comports with the intent of the parties, and the circumstances of the case. *Loring* v. *Norton,* 8 Maine, 61. *Bell* v. *Sawyer,* 32 N. H. 72.

Placing ourselves in the situation of the parties to the deed, reading the whole instrument and seeking for their intent by the light of the subject matter, and the then existing circumstances, we can entertain no doubt that the plaintiff's title does not extend to low water mark, but is restricted to the north line indicated by the plan. *Lincoln* v. *Wilder,* 29 Maine, 169.

The plaintiff contends that the intention of the parties to bound the land at low water mark, is settled "by the provision in the deed that the grantor reserves the right to flow these very flats by a dam below them on the stream, for if they were not conveyed, there was no need of such a right." The answer is: The reservation does not apply to "flats," for the tide flowed them twice a day ; but to the "Great Worromontogus cove," so called, and flowing the cove might flow the land above the line indicated on the plan, and hence the reservation. *Exceptions sustained.*

WALTON, BARROWS and PETERS, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.